Burks J.,
delivered the opinion of the court.
John 'Rudisill, of the county of Nelson, died in the month of June, 1874, having in his lifetime made and published successively three wills, dated, the first on the 22d day of January, 1868; the second on the 14th day of February, 1871, and the third and last in the month of April or May. 1872.- The second contained a clause revoking all former wills, and the third contained a similar clause. The testator destroyed the last will animo revocandi, leaving the other two uncan-celled; the single question is, whether by the destruction of the third and last will, the second was revived.
The solution of this question, depends upon the construction of section 9, chapter 118, Code óf 1873, which is in these words:
“No- will or codicil, or any part thereof, which shall be in any manner revoked, shall, after being revoked, be revived otherwise than by the re-execution thereof, or by a codicil executed in manner hereinbefore required, and then only to the extent to'which an intention to revive the same is shown.”
This section was first enacted in this state at the general revisal of the laws in the year 1849, and is almost a literal copy of the first clause of the English Statutes of Wills, 7 Will. IV and 1 Vic. ch. 26 (July 3, 1837), which may be found in 2 Jarman on Wills (1st Amer. ed.), 751. Indeed, nearly the whole of this chapter, of which this section is a part, as reported by the revisors, was adopted from the English statute for the double reason. as they say, that they approved its provisions,- *and that the adoption here of those provisions would give us the benefit of the English decisions upon them; decisions made by courts over which there generally preside men of ability and learning. Report of Revisors, p. 623.
Previous to the act 1 Vic. ch. 26, it was a vexed question in the English courts, whether by the destruction, animo revocandi, of a will containing a revocatory clause, a former will preserved uncancelled, was thereby revived. It seems to have been held generally by the common law courts, that in such a case it was a necessary conclusion of law, admitting of no proof to the contrary, that the former will was revived. This rule was deduced from the nature of the revoking instrument, which is itself revocable and never becomes final and absolute until the death of the testator; and it was considered that the effectual revocation of such instrument, restored the former will and left it to operate in like manner and with like effect as if the revoking will had never been executed. Goodright v. Glazier. 4 Burr. R. 2512; Burtinshaw v. Gilbert, 1 Cowp. R. 49; Bates v. Holman, 3 H. & M. 503, 525, 542; 1 Jarman on Wills, 123; 4 Kent’s Com’rs. 531; 1 Redfield on Wills. 374, 375; 1 Tuck. Com’rs (Book 2), 295; 2 Minor’s Ins., 931, 932.
Ori the other hand, in the ecclesiastical courts, the revival or restoration of the former will was made to depend on the intention of the testator, to be-gathered from the facts and circumstances of each particular case, and parol evidence was admissible to show the intention. 1 Jarman on Wills, supra, and cases cited in notes on Lawson v. Morrison, 2 Amer. Lead. Cas. (5th ed.), 482, 518 to 523.
The effect of the rule in the law courts was to exclude arbitrarily all extrinsic evidence of intention upon the question of revival, and thus oftentimes to set up a will *contrary to the intention of the testator; while the rule in the ecclesiastical courts threw the door wide open to the admission of such evidence, and suffered the intention of the testator to be determined by “the uncertain testimony of slippery memory.”
It was the object of the English statute, by the 22d section, to abrogate both of these rules, which were attended with the mis-chiefs just indicated, and to establish in their stead a safer rule, by which the intention of the testator would be manifested with more certainty, and be less liable to be defeated by acts and circumstances of an equivocal character.
This section, from which, as before stated, section 9 of our statute was taken almost in totidem verbis, was construed by the prerogative court in the year 1843, and, therefore, before its adoption in this state. The case decided was, in its circumstances, almost identical with the one in judgment here.
A testatrix, after the act 1 Vic. ch. 26, duly executed a will, and, subsequently thereto, two other wills, in each of which was contained a clause revoking all former wills. She afterwards destroyed the two latter wills. It was held that the first will was not thereby revived, and that parol evidence was not admissible to show an intention to revive.
Sir Herbert Jenner Fust said: “I feel that I have no discretion to exercise in this case. There have undoubtedly been cases decided over and over again under the statute of frauds, holding that parol evidence was admissible to prove the revival of a once revoked instrument. It was °this that led to the introduction of the 20th and 22d sections into the present Wills Act. It is admitted, in this case, that the testatrix did, subsequently to the will of January, make two other wills; that both were duly executed; and both contained a clause expressly ’•revoking all former wills. Then, the first was revoked to all intents and purposes, and to have a re-operation, it must have been revived. Then, was it revived? The only mode by which it could be revived is that pointed out by the 22d section. That section is most express; there must be a re-execution. There are no other means of showing an intention to revive. Destruction of the revoking instrument is not suffHent; it is not a re-execution of the revoke 4 will, according to the present act. I pror>~”nce against the paper as a will.” Major & Mundy v. Williams & Iles, 3 Curteis, 453. (7 Engl. Eccl. R. 453).
This is the only English case up-'n the construction of this section of the statute, which has been brought to our notice, and we find eminent law-writers concurring in the construction there given. 1 Jarman on Wills,. *387 123; 4 Kent. Com. (5th ed.,) 533, note a; 1 Redfield on Wills (3d ed.,) 369-371; Id. 320-322. and notes; 2 Amer. Lead. Cas. (5th ed.), 522; 1 Lomax’s ex’ors (2d ed.,) side p. 53, top 131; Id. top pp. 160-161; 2 Minor’s Ins. (2d ed.,) 932.
We are not aware that this section (the 9th of our act) has ever been construed by this court. There is no case reported. But we find no difficulty at all in construing it. Its language is very plain, and taken in connection with the other sections of the act of which it is a part, its meaning can hardly be mistaken.
By section 4 it is declared how wills and codicils (see section 1) may be executed and attested; by sections 7 and 8, the “manner” in which they may be revoked; and by section 9, the only mode, in which, after being “in any manner revoked,” they may be “revived,” and that mode is by “re-execution, or by codicil.”
The circuit court for the ¿county of Nelson, affirming the judgment of ^ the county court of said county, held *tliat the paper writing offered for probate as the last will and testament of John Rudisill, deceased, bearing date on the 14th day of February, 1871, had been revoked by the subsequent will of said decedent, executed in April or May, 1872, and was not revived by the destruction, animo revocandi, of the last named will; and that, therefore, the said paper writing was not the true last will and testament of the said decedent, and that the motion to admit the same to probate as such last will and testament be overruled.
We are all of opinion, for the reasons stated, that there is no error in the said judgment of the said circuit court, and that the same should be affirmed.
Judgment affirmed.